United States District Court
Southern District of Texas
**ENTERED**
May 15, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ASHLEY MARIE ABELAR, § § Plaintiff, § § v. § CIVIL CASE NO. H-23-21 § HARRIS COUNTY, TEXAS, LATOYA S. § BRYANT, WALMART, INC., and AXON § ENTERPRISE, INC., § § Defendants. § | |

## MEMORANDUM AND OPINION

In January 2021, a Harris County Sheriff's Deputy, Latoya Bryant, working a second job as a loss protection officer at Walmart, detained Ashley Abelar for suspected shoplifting. Abelar alleges that, after she followed Deputy Bryant's instructions to accompany her to an office on the premises, Deputy Bryant became violent.  Abelar alleges that Deputy Bryant pushed Abelar against the wall and brandished a gun in Abelard's face, then tased Abelar.  According to Abelar, Deputy Bryant discharged her taser for about a minute and a half, leaving burn marks on Abelar's legs and hands.  Abelar sues Deputy Bryant, Harris County, and Walmart for allegedly violating her civil rights.  Abelar sues Axon for the allegedly defective design and manufacture of the taser weapon used.  (Docket Entry No. 1).  Harris County, Walmart, and Axon have moved to dismiss.[1] (Docket Entry Nos. 8, 13).  Abelar did not respond to the defendants' motions, but she has moved to amend her complaint.  (Docket Entry No. 28).  Walmart and Axon oppose Abelar's motion to amend.  (Docket Entry Nos. 38, 40).

---

[1] Deputy Bryant has not made an appearance in this case.

The court grants the motions to dismiss and, with conditions, the motion to amend. Abelar must file an amended complaint by **June 16, 2023**.[2] The reasons are as follows.

I.  **The Legal Standards**

   A.  **The Defendants' Motions to Dismiss under Rule 12(b)(6)**

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

"A complaint 'does not need detailed factual allegations,' but the facts alleged 'must be enough to raise a right to relief above the speculative level.'" *Cicalese v. Univ. Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019) (quoting *Twombly*, 550 U.S. at 555). "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic

---

[2] Abelar has also moved for leave to file a belated response to the motions to dismiss. (Docket Entry No. 42). Because the court grants Abelar's motion to amend, it denies the motion for leave to file a response.

deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (alterations omitted) (quoting *Twombly*, 550 U.S. at 558).

### B. Abelar's Motion to Amend

Because Abelar filed her motion for leave to amend before the court entered a scheduling order, her motion for leave to amend is governed by Rule 15(a). *S & W Enters., L.L.C v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535-36 (5th Cir. 2003).

Rule 15(a) states that "the court should freely give leave [to amend] when justice so requires." FED. R. CIV. P. 15(a)(2). The granting of leave to amend is not automatic, but within the district court's discretion. *Moore v. Manns*, 732 F.3d 454 (5th Cir. 2013). This discretion is narrow: "[A]bsent a 'substantial reason' such as undue delay, bad faith, dilatory motive, repeated failures to cure deficiencies, or undue prejudice to the opposing party, the discretion of the district court is not broad enough to permit denial." *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 425 (5th Cir. 2004).

## II. Analysis

### A. Harris County's Motion to Dismiss

#### 1. Improper Service of Process

Before addressing Harris County's Rule 12(b)(6) motion, the court addresses the County's argument that it is not subject to the court's personal jurisdiction because it has not been properly served.

Federal Rule of Civil Procedure 4 provides that a local governmental entity may be properly served by:

> (A) delivering a copy of the summons and of the complaint to its chief executive officer; or

3

>    (B) serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant.

FED. R. CIV. P. 4(j)(2).

Abelar served Harris County by registered mail addressed to Judge Lina Hidalgo, who Harris County does not dispute is its chief executive. Although the summons and complaint were delivered to the correct address, Judge Hidalgo did not sign the return receipt. Instead, the receipt was signed by a "J. Garay." Harris County states that Garay is not authorized to accept service on behalf of Judge Hidalgo and Harris County. Harris County argues that, under Texas law, service by mail is defective when the return receipt is not signed by the addressee. *See* TEX. R. CIV. P. 107(c) ("When the citation was served by registered or certified mail as authorized by Rule 106, the return by the officer or authorized person must also contain the return receipt with the addressee's signature.").

Harris County is incorrect that Abelar must serve it in conformity with subsection (B) of Rule 4. Rule 4 does not require a plaintiff to comply with both subsections (A) and (B). *Cf. Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1141 (2018) (the ordinary meaning of "or" is disjunctive in the context of statutory interpretation).

Abelar effected proper service under subsection (A) by "delivering a copy of the summons and of the complaint to [the County's] chief executive officer." This service is sufficient under the Federal Rules. *See Florance v. Buchmeyer*, 500 F. Supp. 2d 618, 632 (N.D. Tex. 2007) ("Under this rule, service of process for the State of Texas could be effected by serving the Chief Executive Officer of the State, Governor Rick Perry, *see* TEX. CONST. art. 4, § 1, or by serving process in compliance with the Texas rules of procedure."). Harris County does not challenge the propriety of service under Rule 4(j)(2)(A). There is no need for Abelar to comply with both Rule 4(j)(2)(A),

4

which does not have the signature requirement, and Texas state law, which does. Service was properly made, and this court has jurisdiction over Harris County.

## 2. Failure to State a Claim

Harris County also argues that the complaint allegations are insufficient for it to be held liable under 42 U.S.C. § 1983 and *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Harris County cannot be held liable for the conduct of its employees under respondeat superior. *Burns v. City of Galveston*, 905 F.2d 100, 102 (5th Cir. 1990). Municipal liability under 42 U.S.C. § 1983 "requires proof of three elements: a policy maker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (quoting *Monell*, 436 U.S at 694). "The official policy itself must be unconstitutional or, if not, must have been adopted 'with deliberate indifference to the known or obvious fact that such constitutional violations would result.'" *James v. Harris County*, 577 F.3d 612, 617 (5th Cir. 2009) (quoting reference omitted); *see also Connick v. Thompson*, 563 U.S. 51, 60 (2011) ("Plaintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury." (quoting *Monell*, 436 U.S. at 691))). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997). "A showing of simple or even heightened negligence will not suffice." *Id.* at 407. Instead, it "must amount to an intentional choice, not merely an unintentionally negligent oversight." *James*, 557 F.3d at 617–18 (quoting *Rhyne v. Henderson County*, 973 F.2d 386, 392 (5th Cir. 1992)).

"Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. at 61. Official policy may be found in "written policy statements,

5

ordinances, or regulations, but it may also arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (quoting reference omitted); *Piotrowski*, 237 F.3d at 581–82. "A customary policy consists of actions that have occurred for so long and with such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of the disputed conduct." *Jackson v. Valdez*, 852 F. App'x 129, 135 (5th Cir. 2021) (per curiam) (quoting reference omitted). "To plausibly plead a practice 'so persistent and widespread as to practically have the force of law,' a plaintiff must do more than describe the incident that gave rise to [her] injury." *Id.* (quoting *Peña v. City of Rio Grande*, 879 F.3d 613, 622 (5th Cir. 2018)).

> As the Fifth Circuit has summarized:
>
> [Fifth Circuit] caselaw establishes three ways of establishing a municipal policy for the purposes of *Monell* liability. First, a plaintiff can show "written policy statements, ordinances, or regulations." Second, a plaintiff can show "a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." Third, even a single decision may constitute municipal policy in "rare circumstances" when the official or entity possessing "final policymaking authority" for an action "performs the specific act that forms the basis of the § 1983 claim."

*Webb v. Town of Saint Joseph*, 925 F.3d 209, 214–15 (5th Cir. 2019) (footnotes omitted) (quoting references omitted).

"To state a cognizable failure-to-train claim, a plaintiff must plead facts plausibly demonstrating that: (1) the municipality's training procedures were inadequate; (2) the municipality was deliberately indifferent in adopting its training policy; and (3) the inadequate training policy directly caused the constitutional violations in question." *Jackson*, 852 F. App'x at 135 (citing *World Wide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 756 (5th Cir. 2009)). "To proceed beyond the pleading stage, a complaint's 'description of a policy or

6

custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts.'" *Peña*, 879 F.3d at 622 (alteration in original) (quoting *Spiller v. Tex. City Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997)).  To meet this burden, a plaintiff must allege specific facts showing:

> "[a] policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority"; or "a persistent, widespread practice of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy."

*Jackson*, 852 F. App'x. at 135 (alteration in original) (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)).  Pointing to "isolated instances" does not sufficiently plead a municipal custom.  *Id.* (quoting reference omitted).

Abelar alleges that "Harris County failed to train its officers on proper taser device use," (Docket Entry No. 1 at 10).  Abelar also alleges that Deputy Bryant's conduct "violated Harris County's policy . . . specifically for the use of tasers."  (*Id.* at 8).  Regardless of whether Abelar seeks to hold the County liable because it has failed to train its officers on proper taser use, or having an inadequate policy for proper use, the complaint allegations regarding the County policy on the use of tasers are insufficiently pleaded.  Abelar fails to allege facts that could show an inadequate policy or procedure that it was developed with deliberate indifference.  Nor has Abelar sufficiently pleaded that Harris County's failure to train or supervise on proper taser use caused the violation of her civil rights.

Abelar's remaining allegations against Harris County are conclusory.  She alleges that Harris County acted with deliberate indifference; inadequately hired, trained, and supervised its employees; and failed to follow written policies and procedures, but she does not plead facts in support.  (*See* Docket Entry No. 1 at 9–10).

7

The court grants Harris County's motion to dismiss. On its review of the proposed amended complaint, the court finds that Abelar has not cured the deficiencies in her original complaint. While Abelar accurately states the law, her allegations remain conclusory. (*See, e.g.*, Docket Entry No. 28-2 ¶¶ 5.6–5.8). Abelar may replead her claims against the County only if she believes that the proposed amended complaint may be supplemented within the limits of Rule 11.

### B.     Walmart's Motion to Dismiss

Walmart argues that allegations of the complaint provide no basis for liability against it under either § 1983 or the relevant state-law causes of action. The court agrees. Abelar's original complaint contains only the allegation that Walmart employees witnessed Deputy Bryant's conduct. (Docket Entry No. 1 at 3). This allegation is not sufficient to state a claim against Walmart, regardless of the cause of action.

The court grants Walmart's motion to dismiss.

### C.     Axon's Motion to Dismiss

Axon argues that Abelar has not stated a products-liability claim for either a design or manufacturing defect. (Docket Entry No. 13 ¶ 3). A manufacturing defect exists "when a product deviates, in its construction or quality, from the specifications or planned output in a manner that renders it unreasonably dangerous." *BIC Pen Corp. v. Carter*, 346 S.W.3d 533, 540 (Tex. 2011) (citation omitted). A plaintiff alleging a design defect must allege facts showing that: "(1) the product was defectively designed so as to render it unreasonably dangerous; (2) a safer alternative design existed; and (3) the defect was a producing cause of the injury for which the plaintiff seeks recovery." *Casey v. Toyota Motor Eng'g & Mfg. N. Am., Inc.*, 770 F.3d 322, 330 (5th Cir. 2014); *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 311 (Tex. 2009); *see also* TEX. CIV. PRAC. & REM. CODE. § 82.005(a) (statutory requirement to prove existence of "safer alternative design" and that the defect in question "was a producing cause" of the injury alleged).

8

Axon argues that the complaint "does not identify any deviation in construction, quality, specification or planned output, let alone an allegation that the unidentified defect rendered the [energy weapon] unreasonably dangerous." (Docket Entry No. 13 ¶ 10). The court agrees. Abelar's allegations state that Deputy Bryant activated the taser for a longer period than it had been subjected to laboratory testing on humans. (Docket Entry No. 1 at 10–11). There are no allegations that Axon represents that the taser cannot be safely engaged for such an extended period. A product is not defectively manufactured simply because it may be used in an unsafe or untested manner.

The design-defect claim is also insufficiently pleaded. Most significantly, Abelar fails to plead the existence of a safer alternative design, as required under Texas law.

The court grants Axon's motion to dismiss.

**D.     Abelar's Motion for Leave to Amend**

Abelar filed her motion to amend approximately one month after Axon's motion was ripe for response, and approximately one-and-a-half months after the motions filed by Harris County and Walmart were ripe for response. (*See* Docket Entry Nos. 6, 8, 13, 28). She has not sought amendment in the past. Although Abelar could have amended earlier or requested leave to amend when she filed her response to the motions to dismiss, the defendants have not demonstrated that they are "prejudice[d]" by the filing of an amended complaint or that it would "impose unwarranted burdens on the court." *N. Cypress Med. Ctr. Operating Co., Ltd. v. Aetna Life Ins. Co.*, 898 F.3d 461, 478 (5th Cir. 2018) (quoting *Mayeaux*, 376 F.3d at 426). There is no evidence of bad faith or dilatory motive.

Axon argues that the proposed amended complaint does not cure the deficiencies in the original complaint. The court agrees that the proposed amended complaint does not add any allegations that would support a claim for manufacturing defect. With respect to a design defect,

9

Abelar's proposed amended complaint alleges that, although Axon knew that overexposure to its taser products can "damage nerves, muscle[,] and other organs of human targets," (Docket Entry No. 28-2 ¶ 6.12), Axon's X26P taser did not contain controls such as "breakers and warning signals." (*Id.* at 12 ¶ 6.14).[3] "Because of this failure, Plaintiff was continuously subjected to a current from an Axon TASER™ for more than a minute and a half." (*Id.* at 13 ¶ 6.13). Abelar also alleges that "Axon could have easily manufactured a TASER™ with safety features that limit the length of time that . . . Bryant could continuously discharge her TASER™," because Axon does in fact manufacture such a taser that pulses only up to 30 seconds at a time. (*Id.* at 14 ¶ 6.15).

      These allegations are sufficient to state a claim for a design defect. *See Casey*, 770 F.3d at 330. Abelar alleges facts supporting an inference that a taser that does not shut off or warn its user of the risk of injury when used beyond the tested period is unreasonably dangerous. Abelar points to Axon's other product to demonstrate that a safer alternative design exists. A plaintiff ordinarily cannot identify a safer alternative design by pointing to a "different product." *See, e.g.*, *Brockert v. Wyeth Pharm., Inc.*, 287 S.W.3d 760, 771 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (citing *Caterpillar, Inc. v. Shears*, 911 S.W.2d 379, 384–85 (Tex. 1995)). But Abelar's proposed amended complaint points to other Axon products to identify features that might be incorporated into the X26P to address its alleged defects. Those features both exist and are already incorporated into existing products, supporting an inference that a safer alternative design for the X26P is available. Finally, Abelar alleges that the X26P's failure to shut-off or warn Deputy Bryant produced her injury.

---

[3] The proposed amended complaint's paragraphs are erroneously numbered on pages 13 and 14.

Walmart states in its opposition to the motion for leave to file an amended complaint that the factual bases for the state-law claims Abelar seeks to add "are the same as her excessive force claims under 42 U.S.C. § 1983 that she plead[ed] in her original complaint." (Docket Entry No. 40 ¶ 8). This fact weighs in favor of, not against, granting leave to amend. *Mayeaux*, 376 F.3d at 427 (amendments based on "alternative legal theories for recovery on the same underlying facts . . . generally should be permitted").

Walmart argues that the allegations in the proposed amended complaint preclude its liability because Abelar cannot show that Deputy Bryant was a state actor. (Docket Entry No. 40 ¶ 9). Walmart points out that Abelar's proposed amended complaint alleges that Deputy Bryant was in uniform, carrying weapons issued by Harris County, and that Harris County itself should be held liable. (*Id.*). These alleged inconsistencies are not grounds for the court to deny leave to amend. A plaintiff may set out alternate theories, even if they are inconsistent. FED. R. CIV. P. 8(d)(2) & (3). Among other things, wearing a uniform is not a guarantee that a peace officer is a state actor for purposes of § 1983 liability. *Tyson v. Sabine*, 42 F.4th 508, 523 (5th Cir. 2022) (noting both cases where uniformed officers were not held to act under color of law and those in which plainclothes officers were).

Additionally, under certain circumstances, a private entity may be held liable under § 1983. An off-duty officer acting as a private security guard or other private employee may act in a manner that subjects her private employer to § 1983 liability. *Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 750 (5th Cir. 2001) ("[W]e will not subject a merchant to § 1983 liability unless an officer has failed to perform independent investigation, and that evidence of a proper investigation may include such indicators as an officer's interview of an employee, independent observation of a suspect, and the officer writing his own report.").

11

With respect to the rule announced in *Morris,* (Docket Entry No. 28-2 ¶ 4.6), it is not clear whether Deputy Bryant detained Abelar based on the deputy's own observations or at the direction of another Walmart employee. (*See, e.g.*, Docket Entry No. 28-2 ¶ ¶ 4.6 ("Ms. Abelar . . . was stopped before she left the store by Harris County Sheriff's [Deputy] Latoya Bryant.")). Deputy Bryant then escorted Abelar to an office. (*Id.* ¶ 4.7). Abelar alleges that "without cause or warning, Deputy Bryant pushed Ms. Abelar up against a wall and[,] brandishing her gun, Deputy Bryant then pulled her Axon TASER$^{TM}$ [out] and electrocuted Ms. Abelar in the chest." (*Id.* ¶ 1.3). Viewed in the light most favorable to Abelar, the complaint alleges conduct for which Walmart may be held liable.

### III.   Conclusion

The court grants the defendants' motions to dismiss, without prejudice. (Docket Entry Nos. 6, 8, 13). Abelar's motion for leave to file a response to the motions to dismiss the original complaint, (Docket Entry No. 42), is denied.

Abelar's proposed amended complaint, (Docket Entry No. 28-2), does not cure the original complaint deficiencies with respect to the claims against Harris Country or the manufacturing-defect claim against Axon. Unless Abelar further amends her complaint, she may not replead those claims. The court grants the motion for leave to amend. (Docket Entry No. 28). Abelar must file her amended complaint by **June 16, 2023**.

SIGNED on May 15, 2023, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge